On the 5, 2, 4, 1, 3, Mildred Rodriguez-Lopez, v. Triple-S Vida. Good morning, Mr. Gradovich. Good morning, Your Honors. For the record, I'm Attorney Victor Atacos Diaz, representing Avalon. May I proceed, Your Honor? Please. Your Honor, today I'm here to argue in regard to a case that we have filed in regard to ERISA law, and in regard to a determination made by the District Court back in October 1st, 2015. Our main concern in regard to our appeal, Your Honor, was based upon two grounds. One, it was the determination made by the court in order to determine that the actions made by Triple-S, in this case, were properly done because they were directly and clearly authorized to do so. And the second issue that we raised is the standard that was applied in regard to determination. In this case, we have a long-term disability insurance plan, which was made by a corporation named Mova Pharmaceutical. Mova Pharmaceutical made that insurance in order to provide some benefits to their employees. My client was an employee in this company, and at some point in time, she became ill and was not able to continue working. The policy has two main benefits. One was mental, and the other one was physical. One was a period of time, and the other one was until the age of 65. My client qualified for both benefits because she had a mental condition, and she also has a physical condition. And all the evidence that was submitted to the insurance company always provided and assured that she has all the requirements in order to comply with the benefits that were granted to her. In this case, at some point in time, and in a capitious way, AAAS denied and suspended the benefits due to the fact that some doctors that have examined some files, which did not examine my client, determined that she was in a condition in order to be able to work and that she no longer needed the benefits. At that point in time, it was raised that the action was not proper by AAAS, and a complaint was filed. In this case, the opinion of order that was entered by the district court, it is important, and it is the essence of our allegation, that there must be a determination by the district court that there was a clear delegation of the authority in order to allow AAAS to perform what they did. Your argument is there was no delegation at all. Exactly. And that is our concern. That is our issue. We allege that in this case, there is no document, there is no paper, there is no contract. There is nothing which established that there was a modification in the terms and rights of the AAAS and MOVA, and that they never agreed upon to that. The summary plan description contains an express delegation to the plan sponsor, i.e., the employer here. Is that correct? Yes. It established that it has to be, it established that the entity with the administration and sponsor was MOVA Pharmaceutical. In no place or whatever document was never raised, was never presented to the district court, that there was a clear delegation. As a matter of fact, in the opinion and order that was entered by the district court, it is said that they inferred. So that means clearly that there was no document. So you have the SPD with an express delegation to the plan sponsor, but then you have the decision being made here by the insurer or the insurer's agent rather than the plan sponsor. What's your position on the, and so they've got to argue that the delegation of the plan sponsor was okay, and then somehow there's an implicit delegation from the plan sponsor over to the insurer. What's your position on whether an SPD can delegate discretionary authority when the plan itself is silent? Well, in this case, we have to consider that we have very powerful companies dealing with this issue. Well, but just let me understand what your position is. Let's assume the plan is entirely silent and contains no delegation of discretionary authority. Let's then assume, unlike this case, there's an SPD, and the SPD contains a purported delegation to the insurance company. What's your position on whether that's valid? In other words, that the SPD can make a delegation that the plan itself does not? No, my position is that it has to be a clear delegation by way of documents, amendments, and contracts reached between departments. Right, but I just told you there is a clear delegation in my hypothetical in the SPD, but there is not any delegation at all in the plan. What's your position on the effectiveness of a delegation that is only in the SPD? The SPD, we have to consider here that Triple S has a fiduciary capacity here. And according to that fiduciary capacity, they have to work and perform in accordance to the benefit of the person who bought the insurance and in order to the benefit of the employees that were also being benefit of that insurance. So in that sense, even though Triple S was the entity that was making the payments and was examining the records and was considering all the documents that were presented, they have to consult, discuss, or whatever determination they were going to make in order to determine that their action was properly being done. And it is essential to raise this point due to the fact that in this case, if the determination to be made by Triple S was a de novo standard, they would have obtained the evidence to corroborate that my client was disabled. That was physically disabled and that she complies and that she deserves to continue receiving the benefit that she was receiving. As a matter of fact, they alleged, Triple S alleged in their brief that my client received some additional amounts. And that is incorrect because it was not a reward that was given by Triple S. It was something that she earned in regard to the rights that she has being totally disabled, being physically disabled. And as such, she was entitled to continue receiving that assistance. It is important to consider this fact due to the situation that in the standard that could be applied, if they have applied the de novo standard, it will represent that my client will still have the opportunity to present as she did, as she continually did, the evidence that she was totally disabled. On the other hand, if the clear delegation was made, which we contend that in this case was never done, then we apply the standard of the arbitrary capricious, which means that my client could not present any evidence and we have to accept whatever they say. In this case, one of the... So are you requesting a remand if we agree that there is no clear delegation? Yes. And also, we understand that with the evidence that we provided, because if you read the whole medical record, which are the 600 pages that were included in the appeal, it clearly states by all the physicians that were attending my client that she was totally disabled. Not mental, totally physically disabled. And at this point in time, the action made by Triple S was capricious and affected the rights that the policy granted to my client. So I understand that in this case, and in this case, the action done by the district court, which in their determination, the district court said, we infer, which means that there was no clear delegation. And according to the law, there has to be a clear, specific determination in order for Triple S to apply the arbitrary capricious standard. In the noble standard, we will have the opportunity to corroborate all the doctors of my client. All the doctors, all the time, reflected, submitted, sent, filled up, all the documents saying that she was totally disabled. And I understand that in this case, the determination made by the court was incorrect. Thank you. May I be excused momentarily? Sit down. Yes. May I be? Please. Thank you. Morning. Good morning. May I please the court? My name is Diana Pereceda. I am here on behalf of Triple S Evida. Your honors, very briefly, I want to address the three points I will be expounding upon within the next 10 minutes. First, before the district court, appellant continuously and repeatedly argued that the standard of review the court should apply was the abuse of discretion standard. It is now on appeal that appellant has changed her tune and for the first time has argued that de novo review applies, and therefore her argument regarding the applicable standard should be deemed waived. Second, our position doesn't rest solely on appellant's failure to make, to raise and develop correct and timely arguments before the district court. Our position rests on the terms of the plan, which we believe allowed appellant to understand that her claims would be reviewed in a scenario where the terms of the plan would be interpreted and where the decision maker would have complete discretion to determine eligibility. On your first point, certainly in the initial part of their moving for summary judgment, they said the decision wasn't arbitrary and capricious, but then in the further filings, including the motion requesting summary judgment, I'm looking at pages 14 to 15, it seems that the plaintiff clearly argued that there was no delegation to Triple S. They actually cited our key case on point, the Grouse case versus Sun, and said that the district court should no longer apply the highly deferential, arbitrary, and capricious standard. So how could we find that's a waiver? Your Honor, you are correct. In her second to last argument in her motion for summary judgment, appellant argued that Triple S had not been delegated with discretion. However, she does not tie this argument to a request for the district court to apply the NOVO review. It's disconnected from her other arguments. If you look at that same motion at paragraphs 3, 5, 8, 14, and 28, if you look at her opposition to our motion for summary judgment at paragraphs 7 and 14, and her reply brief at paragraphs 3, 11, 23, 30, and 41, appellant argued specifically that the district court should find that Triple S acted arbitrarily and capriciously. In fact, in her reply, there's no mention of the words the NOVO anywhere. But doesn't our Brigham versus Sun Life, which similarly the petitioner didn't argue the correct standard, and for various reasons we excuse it, doesn't that give us a footing to do the same here? Your Honor, I believe Brigham versus Sun Life, in that case, the appellant changed her position before this court, and the court refused to entertain her new arguments and applied the abuse of discretion standard like the appellant had argued before. The court did not apply the NOVO review on appeal. This court determined and stuck to its clear case law, stating that the court doesn't depart from well-worn principles, that arguments not ceasably raised in the district court cannot be raised for the first time on appeal. Well, let's get to the district. You're right, there are ambiguities in the papers that they filed. And so I suppose one could press to read it either way, but the whole purpose is to make sure the district court knows what's being argued and has a chance to address it. And the district court here plainly interpreted the plaintiff's filings. The district court said in its opinion the parties disagree, differ as to who had discretionary authority, the employer or Triple S. And Rodriguez denies that Triple S had authority to determine eligibility. Therefore, I, the district court, must address whether Triple S had authority to make long-term disability determinations. So clearly the district court thought the issue was before it and made a ruling. So if you assume for a moment that that's enough to get over the waiver issue, what language in the plan do you point to or do you rely on the SPD to establish that Triple S had the type of discretionary authority that you want us to find it had? Okay, Your Honor, I will point to the language in the plan just briefly two things. I believe the court, the district court, was generous in making sense of the contradictory arguments within plaintiff's papers. Sure, but when a district court says I construe these papers as making argument X, I don't know of any case we have that says we're going to deem argument X waived. And a second, Your Honor, the appellant before this court has also made plainly contradictory arguments. As you can see from the way the record developed before this court, her last position, so her first position in her brief was that she herself, Rodriguez, had discretion to determine eligibility. She then said it was Mova, her former employer, then both her and Mova when Triple S raised those inconsistencies and the issue with perfunctory and undeveloped arguments. Sure, but I think you've got a few judges up here who think the issue is preserved below and raised above and are interested in what your argument is as to whether if it is preserved there was a delegation to Triple S. Okay, Your Honor, we believe that, or Triple S considers that the case law in this circuit, as you know, obviously doesn't require magic words. It doesn't require specific language. It only requires that claimant be made aware of what of the terms of the plan and whether her claim or his claim would be analyzed in a scenario where the decision maker had discretion to interpret the terms of the plan and make eligibility determinations. Right, so what's the language here? I'm sorry? So what is it here that does that? Okay, so when one looks at the plan, which is at page 15 of the appendix, there is on the one hand, of course, the clear recognition of discretionary authority and power to construe the terms of the plan that was delegated to MOVA Pharmaceutical. Well, actually, that's not in the plan at all. That's in the SPD. Correct. Okay, so but in any event, what language is there that delegated it to your client? When one looks at the way the summary plan description describes the process of making claims, one can see that both MOVA and Jefferson Pilot, subsequently succeeded by SSS, they both played vital roles in the process of making a decision. That would be true under either standard. Jefferson Pilot's role would be vital under either the abuse of discretion or the arbitrary and capricious. So what is it that tells us it was the former rather than de novo? Your Honor, again, the specific ways in which the claimant interacted with both MOVA and Jefferson Pilot and the way that interaction is described in the plan allows the claimant to understand that the claims would be reviewed and the terms of the plan would be interpreted in making the eligibility determination. There's another piece of information that is key to understanding that, and it's that MOVA ceased to exist at some point in the 2000s, and SSS assumed not by delegation, but by the way claimants have interacted with SSS and the way claimant in this case interacted with SSS, SSS assumed the role MOVA had in adjudicating claims. There's nothing in the plan or even the SPD saying that. That's correct because the plan proceeds, it's from the 1990s and it proceeds. Right, so you could have amended the plan, but you never did. That's correct, Your Honor. The plan stayed as it is even after SSS assumed the role of Jefferson Pilot and MOVA. Permission to withdraw? Thank you. I just want to ask you one question, I'm sorry. Is there any, could this situation be amended in any way by practice rather than strictly written document? If it was by practice, Your Honor, with all the respect, with all the evidence that was submitted, it was more than enough to continue providing the benefits to my client. I wasn't really speaking about that. I was dealing with practice in terms of dealing with your client dealing with SSS. In regard to SSS, Your Honor, one of the things is that they have the expertise in regard to what is the way in which this plan was going to be accomplished and how that was going to be handled. So in that fashion, Your Honor, if they have the experience, if they have the equipment, if they have the personnel in order to put into place this insurance benefit program, then they have the expertise to do it. But that doesn't mean that a clear delegation was made to them. Let me rephrase my question and maybe be more direct. Can there be delegation by practice? I understand that no, because in one of these things in regard to the policy, it says that it was given a specific to Moa Pharmaceutica, the administration, also in regard to the insurance policy. How long was SSS practice in effect? How long? Yes, for how many months, days, years? Years, years. SSS was administering the plan for years? For years, yes, Your Honor. And under what delegation was they doing that? Well, there was not a clear delegation. There was a delegation to make compliance with the insurance plan. That was delegated because they have the expertise and they have the personnel in order to do it. Moa Pharmaceutica is a corporation dedicated to make medicines, make research, make other things. So at this point in time, whenever you have something in which you need an expert dealing with something, you bring the expert to perform the work that needs to be done. But that doesn't mean that by the example you are delegating. That means that if you are going to perform something, if you are going to change any rule, if you are going to change any command, you have to discuss with the entity who acquired the insurance. And in this case, it was Moa. And may I finish my? Please. And in that scenario, Your Honor, taking into consideration with whom we are dealing here, Jefferson Pilon and Triple S, they were aware that in order to have this delegation, they needed something written between the parties. And now that they say that they assume it's very easy when now they are alleging that Moa is not here. If Moa was not here, then it was their duty in order to get something in which it was clear that that transfer was made to them so that there would be no concern, no doubts as we are raising here today. Wait. Triple S wasn't a successor of Moa. They were a successor of Jefferson Pilon, right? Exactly. Okay. So. Exactly. Thank you. Ms. Perez, do you want two minutes to respond? Yes, Your Honor. Thank you. Just pointing out in page one of the appendix, there's a document whereby Triple S assumed the obligations of the plan. And therefore, that's how Triple S succeeded Jefferson Pilon. But that's the only document in the record as to that. And Jefferson Pilon had no discretionary authority or nothing in the plan said that Jefferson Pilon had discretionary authority. Your Honor, again, I respectfully disagree. Well, other than the fact that the plan said they would make decisions and you could appeal them. No, Your Honor, I believe that the plan, the way it describes the procedure, the summary plan description, the way it describes the procedure, claimants have to follow. It is clear to them, to the reader, that Jefferson Pilon had discretion to adjudicate, I'm sorry, interpret the terms of the plan and construe them. Are you relying on any language that isn't in your brief? I'm sorry? Are you relying on any plan language that is not in your brief? No, Your Honor. Like I said, there's no language equivalent to the language describing MOVA's discretion. But the way the plan works allows the reader and the claimant to understand that delegation occurs. Well, everyone knew that Triple S would make the decision. Correct. But that doesn't tell us whether it was vested with, when a district court would review that decision, it would be by Arbitrary Capricious or De Novo. There's nothing, and every claim fiduciary has to have appeal rights.  Yes, Your Honor. And, again, we can agree to disagree that, of course, the plan doesn't specifically delegate to Jefferson Pilon, but the way the plan works allows the reader to understand that discretion is exercised. Was those my two minutes?  Okay. Thank you. Thank you. Court is going to take a brief recess after which we will hear the last case, after which we will have a brief ceremony with the Federal Bar Association.